IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Robert E. Blackburn**

Civil Case No.  00-cv-2098-REB-MJW

KELLY FINCHER, by her natural father and next friend, JAMES FINCHER,

Plaintiffs,

v.

PRUDENTIAL PROPERTY AND CASUALTY INSURANCE COMPANY,

Defendant.

---

## ORDER CONCERNING MOTION FOR SUMMARY JUDGMENT

---

**Blackburn, J.**

This matter is before me on the **Defendant's Motion for Partial Summary Judgment** [#211], filed March 9, 2007.  The plaintiff has filed a response [#239], filed August 23, 2007, and the defendant has filed a reply [#246], filed September 10, 2007.  I grant the motion in part, and deny it in part.[1]

## I.  JURISDICTION

I have jurisdiction over this matter pursuant to 28 U.S.C. §§ 1332 (diversity).

## II.  STANDARD OF REVIEW

Summary judgment is proper when there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.  FED.R.CIV.P. 56(c); **Celotex**

---

[1]  The issues raised by and inherent to the motion for summary judgment are fully briefed, obviating the necessity for evidentiary hearing or oral argument. Thus, the motion stands submitted on the briefs. *Cf.* **FED. R. CIV. P. 56(c)** and **(d)**. *Geear v. Boulder Cmty. Hosp.,* 844 F.2d 764, 766 (10th Cir.1988) (holding that the hearing requirement for summary judgment motions is satisfied by court's review of documents submitted by parties).

*Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A dispute is "genuine" if the issue could be resolved in favor of either party. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Farthing v. City of Shawnee*, 39 F.3d 1131, 1135 (10th Cir. 1994). A fact is "material" if it might reasonably affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Farthing*, 39 F.3d at 1134.

A party who does not have the burden of proof at trial must show the absence of a genuine fact issue. *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994), *cert. denied*, 115 S.Ct. 1315 (1995). Once the motion has been properly supported, the burden shifts to the nonmovant to show, by tendering depositions, affidavits, and other competent evidence, that summary judgment is not proper. *Concrete Works*, 36 F.3d at 1518. All the evidence must be viewed in the light most favorable to the party opposing the motion. *Simms v. Oklahoma ex rel Department of Mental Health and Substance Abuse Services*, 165 F.3d 1321, 1326 (10th Cir.), *cert. denied*, 120 S.Ct. 53 (1999). However, conclusory statements and testimony based merely on conjecture or subjective belief are not competent summary judgment evidence. *Rice v. United States*, 166 F.3d 1088, 1092 (10th Cir.), *cert. denied*, 528 U.S. 933 (1999).

### III. FACTS & PROCEDURAL BACKGROUND

This case concerns benefits under an auto insurance policy. The plaintiff, Kelly Fincher, was severely injured when she was struck by a car while riding her bicycle. The accident occurred on May 8, 1994, when Kelly Fincher was 11 years old. Fincher suffered a permanent brain injury and will have to live in an assisted living milieu for the remainder of her life. The car that struck Kelly Fincher was driven by Anthony Bekeshkas who was

insured under an auto insurance policy issued by the defendant, Prudential Property and Casualty Insurance Company.  Prudential has paid Fincher some benefits under the Bekeshkas policy.  In this lawsuit Fincher claims she is entitled to additional benefits known as additional Personal Injury Protection (APIP) benefits.

When the Bekeshkas policy was issued on April 23, 1992, and at the time of the accident on May 8, 1994, Colorado law required all Colorado auto insurance policies to provide a certain minimum level of personal injury protection (PIP) benefits.  The PIP benefits in the Bekeshkas policy are not at issue here.  Within a relatively brief time after the accident, Prudential paid Fincher the required minimum PIP benefits under the Bekeshkas policy.  In addition, at the time the Bekeshkas policy was issued and at the time of the accident, Colorado law required insurers to offer certain optional APIP benefits to their customers.  Bekeshkas was offered APIP benefits when he purchased his Prudential policy, but that offer provided for a $150,000 cap on APIP benefits.  At the relevant times, Colorado law provided that APIP benefits could not be capped at an amount lower than $200,000.  §10-4-710, C.R.S. (1990).  Bekeshkas declined Prudential's offer of APIP benefits with the $150,000 cap.  The Colorado statutes outlining the requirements for PIP and APIP benefits are part of the Colorado Auto Accident Reparations Act, part 7 of article 4 of title 10, C.R.S. (CAARA), repealed by §10-4-726, C.R.S. (2002), effective July 1, 2003.  Although the CAARA has been repealed, the provisions of the CAARA control Fincher's claims against Prudential.  I will refer to sections of the CAARA in this order without further noting their repeal.

Fincher filed this lawsuit seeking to recover APIP coverage under the Bekeshkas policy and under the CAARA.  Fincher asserts that she is entitled to APIP benefits under the Bekeshkas policy because Prudential did not properly offer to Bekeshkas the APIP

3

benefits required by Colorado law.  On June 10, 2002, I entered an order [#91] granting

Prudential's motion for summary judgment.  In that order, I concluded that under Colorado

law as it stood at the time of Fincher's accident, Prudential was not required by Colorado

law to offer APIP benefits that covered pedestrians.  Prior to 1998, some Colordo insurers

had concluded that the CAARA did not require them to offer APIP coverage that included

pedestrians.  In **Brennan v. Famrers Alliance Mutual Insurance Co.**, the Colorado

Court of Appeals held that the CAARA required Colorado auto insurers to offer APIP

coverage that included pedestrians. 961 P.2d 550, 553 (Colo.App. 1998).  Fincher is

deemed to be a pedestrian under the CAARA because she was riding a bicycle at the time

of the accident.  §10-4-703 (9).  I concluded in my June 10, 2002, summary judgment

order that the rule in **Brennan** was not applicable retrospectively.

> In light of the fact that the court has determined that the **Brennan** rule
> should not be applied retroactively, there is no basis for Fincher to claim
> entitlement to APIP benefits.  In turn, absent some demonstration that
> Fincher is entitled to APIP benefits under Colorado law, she has no basis to
> assert contract claims against Prudential under §10-4-708(1).

Fincher appealed my summary judgment order  to the United States Court of

Appeals for the Tenth Circuit, and the Tenth Circuit reversed and remanded.  **Fincher v.**

**Prudential Property and Casualty Ins. Co.**, 76 Fed.Appx. 917 (10th Cir. 2003).  In

**Fincher**, the Tenth Circuit held that Fincher is entitled to reformation of the Bekeshkas

policy because Prudential's offer of APIP benefits to Bekeshkas did not comply with the

requirements of Colorado law concerning the permissible level of the cap on APIP

benefits. 76 Fed. Appx. at 922 - 923.  The Tenth Circuit concluded that the rule in

**Brennan**, requiring an offer of APIP coverage that included pedestrians, was applicable

retroactively because

> **Brennan** did not establish a new principle of law, and instead merely

4

construed [C.R.S. §104-4-710] of the [CAARA] to encompass pedestrians. Thus, we conclude that Prudential was generally obligated at the time of Fincher's accident to offer extended PIP benefits for pedestrians in the amounts set forth in the [CAARA].

*Id*. at 921.  The Tenth Circuit remanded the case for judicial reformation of the Bekeshkas policy to include APIP benefits and, following reformation, resolution of Fincher's other claims.  *Id*. at 922 - 923.

Following the Tenth Circuit's remand, I conducted a trial to the court to determine the effective date of reformation of the Prudential policy and the other terms of reformation.  On February 28, 2006, I issued Findings of Fact, Conclusions of Law, & Orders [#158] reforming the Bekeshkas policy as it applies to Fincher.  I will refer to this order as the Reformation Order.  I analyzed the factors relevant to a determination of a date of reformation, and concluded that the Prudential policy should be reformed as of the date of Fincher's accident on May 8, 1994.  I concluded also that the 200,000 dollar cap on APIP benefits permitted by the CAARA is applicable to the reformed contract.  My Reformation Order resolved Fincher's first cause of action, a claim for reformation of the Prudential policy.

On April 12, 2006, Prudential tendered to Fincher a payment of 92,500 dollars. With this payment, Prudential has paid to Fincher a total of 200,000 dollars in PIP and APIP benefits.  On May 31, 2006, Prudential tendered to Fincher an additional payment of 202,000 dollars.  Prudential made this payment as payment of the statutory interest due to Fincher under §10-4-708(1.8).  That section provides for payment of interest at 18 percent per annum when payment of PIP or APIP benefits is delayed and those delayed payments are recovered later.  §10-4-708(1.8).

Prudential's interest calculation was based on the following undisputed facts.  As of

September 3, 1994, Fincher's basic PIP benefits of just over 100,000 dollars were

exhausted. *Plaintiff's response*, p. 5.  After September, 1994, Prudential refused to pay

additional expenses submitted by Fincher, based on Prudential's position that Fincher

was entitled only to 100,000 dollars in PIP benefits, and was not entitled to APIP benefits.

In my Reformation Order, I reformed the Bekeshkas insurance policy, as applicable to

Fincher, as of the date of Fincher's accident on May 8, 1994.  Under the CAARA, an

insurer must pay benefits to an insured "within thirty days after the insurer receives

reasonable proof of the fact and amount of expenses incurred during that period."  §10-4-

708(1), C.R.S.  Under the terms of the Reformation Order, Prudential was not timely in

paying additional benefits to Fincher, up to the applicable 200,000 dollar cap, to the

extent Fincher submitted claims for additional expenses covered by APIP benefits.

Prudential examined bills submitted by Fincher in this litigation and calculated interest on

those bills from 30 days after the actual treatment dates and/or original billing dates. *Brief*

*in support of motion for summary judgment* [#212], filed March 9, 2007, Exhibit A-6, p. 2.

Currently, Fincher has three claims that have not been resolved: 1) breach of

contract based on Prudential's failure to pay her APIP benefits in a timely fashion; 2)

violation of the covenant of good faith and fair dealing by Prudential; and 3) willful and

wanton breach of contract by Prudential.  In its motion for summary judgment, Prudential

seeks summary judgment on these three claims.

## IV.  BREACH OF CONTRACT

Prudential seeks summary judgment on Fincher's breach of contract claim, arguing

that the claim now is moot because Prudential has paid to Fincher all amounts due under

the insurance policy in question.  Again, following the Tenth Circuit's remand and my

Reformation Order, Prudential made payments to Fincher for the balance of APIP benefits

due to her, and for statutory interest on the delayed payment of APIP benefits.  Prudential

argues that these amounts are the only relief Fincher could obtain on her breach of

contract claim.

Fincher argues that Prudential's payments do not moot her breach of contract claim

because she is entitled to additional relief on this claim.  First, Fincher argues that

Prudential has not paid to her the full amount of interest due to her under §10-4-708(1.8).

That section provides, in relevant part:

> The insurer shall pay interest to the insured on the benefits recovered [in an
> arbitration or a lawsuit] at a rate of eighteen percent per annum, with interest
> commencing from the date the benefits recovered were due.

§10-4-708(1.8).  Fincher argues that she is entitled to compound interest under the

statute.  Prudential's interest calculation was made on a non-compounding per annum

basis.

Section 10-4-708(1.8) does not provide for compound interest.  Rather, it provides

for interest "at a rate of eighteen percent per annum, with interest commencing from the

date the benefits recovered were due."  It would not be proper for me to read a compound

interest requirement into §10-4-708(1.8) when the Colorado legislature did not provide for

such a requirement.  This is particularly true when, as here, the legislature has chosen to

provide for compound interest in other statutes.  §5-12-102(2), C.R.S. (Authorizing

statutory interest at "eight percent per annum compounded annually"); §13-21-101(1),

C.R.S. (providing for prejudgment interest to include compounding of interest annually,

and distinguishing between compounding interest rates and non-compounding interest

rates).  I conclude, as a matter of law, that Fincher is not entitled to compounding interest

under §10-4-708(1.8).  Fincher does not dispute otherwise the accuracy of Prudential's

interest calculations or the adequacy of Prudential's interest payment, as calculated on a non-compounding basis under §10-4-708.

In the **Fourth Amended Pretrial Order** [#238], filed August 14, 2007, Fincher asserts that she also is entitled to an award of interest under §5-12-102(1)(b), C.R.S. This section applies to claims for unpaid PIP or APIP benefits only as the interest rate applicable to the payment of post-judgment interest. ***Loza v. State Farm Mut. Auto. Ins. Co.***, 971 P.2d 251, 252 (Colo. App. 1998). To the extent an award of post-judgment interest is available to Fincher in this case, Prudential has paid her at the 18 percent non-compounding rate provided in 10-4-708(1.8) rather than at the eight percent rate, with annual compounding, provided in §5-12-102(1)(b). A final judgment based on my Reformation Order has not yet entered, so it is debatable whether or not a post-judgment interest rate is applicable to the amounts Prudential owes to Fincher. However, the earliest conceivable date after which the post-judgment rate arguably is applicable is the date of my Reformation Order. Shortly after I issued my Reformation Order, Prudential paid to Fincher the balance of APIP benefits due and interest at the statutory pre-judgment rate of 18 percent per annum. Under these circumstances, there is no basis to argue that Fincher may be entitled to payment of additional interest under the post-judgment rate specified in §5-12-102(1)(b).

Fincher argues also that she is entitled to the entry of judgment on her breach of contract claim because such a judgment would support her claim for attorney fees under §10-4-708(1.7). That subsection provides for an award of attorney fees to an insured based on a claim that an insurer improperly denied or did not timely pay a claim submitted by the insured. Such an award is to be made by the arbitrator or court who hears the

insured's claim.  §10-4-708(1.7)(c).  Fincher is entitled to a judicial determination of the amount of attorney fees, if any, to be awarded to her under this section.

Finally, Fincher argues that she is entitled to other relief on her breach of contract claim, although she does not specify the nature of this relief.  *Plaintiff's response*, p. 8. She notes statements by the Colorado courts indicating that relief in addition to payment of a claim and interest is available when an insurer fails to pay a claim on time.  ***Goodson v. American Standard Ins. Co. of Wisconsin***, 89 P.3d 409, 414 (Colo. 2004) (fact that insurer eventually pays insured's claims does not prevent insured from filing suit against insurer based on insurer's conduct prior to time of payment); ***Cary v. United of Omaha Life Ins. Co.***, 68 P.3d 462, 468 (Colo. 2003) (if only damages an insurer will have to pay on a judgment of breach are amounts owed under policy plus interest, then insurer has little motivation not to breach contract) (quoting ***Dodge v. Fidelity & Deposit Co.***, 788 P.2d 1240, 1242 - 1243 (1989)).  In both of these cases, the court was not referring to damages available under a breach of contract claim, but to relief available on a claim for bad faith breach of an insurance contract.  ***Goodson***, 83 P.3d at 414; ***Cary***, 68 P.3d at 468.  These authorities do not establish that Fincher is entitled to relief other than payment of her APIP claims, payment of statutory interest, and payment of any award of attorney fees by the court based on her breach of contract claim.

My Reformation Order, the undisputed facts in the record, and Prudential's argument in its motion for summary judgment all demonstrate that Prudential concedes that, under the terms of the Reformation Order, Prudential breached its contract of insurance with Fincher.  A *sua sponte* grant of summary judgment is permissible when the losing party was on notice that it had to come forward with all of its evidence on the issue, and the losing party will not be prejudiced by the grant of summary judgment.  ***See, e.g.,***

*Holmes v. Utah, Dept. of Workforce Services*, 483 F.3d 1057, 1067 (10th Cir. 2007).

Here, Prudential is aware of the terms of the Tenth Circuit's ruling in this case and the

terms of the Reformation Order.  Prudential effectively has conceded that, given these

rulings, the unavoidable conclusion is that Prudential breached its contract of insurance

with Fincher.  Given this context, Prudential has come forward with its evidence and

argument on the contract claim.  In these circumstances, I conclude that it is appropriate

to grant Fincher summary judgment on the issue of Prudential's liability on Fincher's

breach of contract claim.  The undisputed facts in the record and the argument of the

parties support the grant of summary judgment on this issue.  Based on this breach of

contract, Prudential has paid to Fincher all of the APIP benefits to which she is entitled

under the terms of the Reformation Order.  Prudential also has paid to Fincher all of the

interest to which Fincher is entitled, based on the tardy payment of APIP benefits, under

§10-4-708(1.8).  Therefore, except for a determination by the court of the amount of

attorney fees, if any, due to Fincher on this claim, Fincher is not entitled to any additional

relief on her breach of contract claim.

On the current record, Fincher's breach of contract claim does not present any

disputed factual issues for determination by a jury.  Fincher is entitled to the entry of a

judgment of liability on her breach of contract claim.  In addition, she is entitled to the

entry of judgment requiring Prudential to pay to her 92,500 dollars as the balance of APIP

benefits due to Fincher, and 202,000 dollars as payment for the statutory interest due to

Fincher under  §10-4-708(1.8).  Again, Prudential already has paid these amounts to

Fincher.  To the extent Fincher seeks any additional relief on her breach of contract claim,

other than a judicial determination of the amount attorney fees due her under §10-4-

708(1.7)(c), there is no basis in law for these claims to additional relief.  Prudential is

entitled to judgment as a matter of law on Fincher's claims for additional relief based on her breach of contract claim.

## V.  VIOLATION OF COVENANT OF GOOD FAITH & FAIR DEALING AND WILLFUL AND WANTON BREACH OF CONTRACT

In addition to her breach of contract claim, Fincher asserts claims for violation of the covenant of good faith and fair dealing and for willful and wanton breach of an insurance contract.  The elements of these two claims differ significantly, but there also are substantial similarities between the two claims.  Based on the considerable similarities, I consider these claims together.

### A.  Elements

Under Colorado law, every insurance contract contains an implied covenant of good faith and fair dealing that imposes on insurers a duty to act in good faith in their dealings with their insureds.  *Farmers Group, Inc. v. Trimble*, 691 P.2d 1138, 1141 (Colo. 1984).  The Colorado courts distinguish between first-party and third-party bad faith claims.  *American Family Mutual Ins. Co. v. Allen*, 102P.3d 333, 342 (Colo. 2004).  A third-party claim involves a claim by an insured against an insurer for the insurer's misconduct with third-parties asserting claims against the insured.  *Id*.  A first-party claim concerns a claim against an insurer for its misconduct with its own insured.  *Id*.  Fincher's bad faith claim is a first-party claim because she is asserting a direct contractual action against Prudential for APIP benefits.  *Krieg v. Prudential Property and Cas. Ins. Co.*, 686 P.2d 1331, 1334 (Colo.1984) (CAARA vests accident victims to whom PIP benefits are payable with third party beneficiary status, thereby creating a direct contractual action against the PIP insurer).

To establish the tort of bad faith breach of an insurance contract, Fincher must

show that 1) the insurer has a duty to act in good faith and to deal fairly with an insured; 2) the insurer acted unreasonably under the circumstances; 3) the insurer knew its position was unreasonable, or recklessly disregarded the fact that its position was unreasonable; and 4) the insurer's unreasonable position was a cause of the Fincher's damages. *See CJI-Civ. 4th* 25:2; *Daugherty v. Allstate Insurance Co.*, 55 P.3d 224, 228 (Colo. App.2002).  "(A)n insurer may challenge claims which are fairly debatable and will be found to have acted in bad faith only if it has intentionally denied (or failed to process or pay) a claim without a reasonable basis." *Brandon v. Sterling Colorado Beef Co.*, 827 P.2d 559, 561 (Colo. App. 1991) (citing *Travelers Insurance Co. v. Savio*, 706 P.2d 1258, 1274-1275 (Colo. 1985)).

Under §10-4-708(1.8), an insured is entitled to an award of treble damages if an insurer wilfully and wantonly fails to pay PIP or APIP benefits when due. *Brennan v. Farmers Alliance Mut. Ins. Co.*, 961 P.2d 550, 557 (Colo.App. 1998), *cert. denied* (August 24, 1998).  To establish a wilful and wanton failure to pay benefits, Fincher must show that Prudential acted without justification and in disregard of Fincher's rights. *Dale v. Guaranty National Insurance Co.*, 948 P.2d 545, 551 (Colo.1997).  Wilful and wanton conduct under the CAARA is a subset of insurance bad faith. *Id*.  Proof of wilful and wanton conduct in this context also will establish an insurance bad faith claim – a claim that an insurer knowingly or recklessly acted unreasonably toward its insured.  *Id*. However, a finding that an insurer's conduct was not wilful and wanton does not necessarily show that the insurer did not act in bad faith.  *Id*.  By the same token, if a plaintiff cannot prove than an insurer acted in bad faith when denying insurance benefits, then that plaintiff cannot establish that the failure to pay benefits was wilful and wanton. In short, a claim of wilful and wanton failure to pay benefits requires a showing of more

egregious action by the insurer than does a claim of bad faith breach of insurance contract.

## B.  Basis of Fincher's Claims

In her complaint Fincher makes the following allegations in support of her bad faith breach of insurance contract claim:

> 45.  From the effective date of the statute requiring that auto insurers offer extended benefits to [their] insureds until the present, Prudential, through its agents and representatives, has made a minimal effort, if any, to advise its insureds of the availability of the extended PIP benefits, including failing to make any effort to ascertain the identity of all insureds who are entitled to extended PIP benefits under *Brennan* and *Thompson*.

> 46.  Upon information and belief, Prudential continued to prematurely terminate benefit payments to insureds eligible for extended benefits despite its knowledge of *Brennan* and *Thompson*, and such conduct constituted a breach of the covenant of good faith and fair dealing.

Incorporating the above allegations, Fincher adds the following allegations in support of her wilful and wanton breach of contract claim:

> 49.  Upon information and belief, sometime after August 24, 1998, but not later than August 1999, Prudential was aware that its offer of extended benefits did not comply with the Colorado Auto Accident Reparations Act, and that reformation was the appropriate remedy for those who did not receive a sufficient offer of extended benefits.

> *   *   *   *

> 51.  Despite this knowledge, Prudential did not reform the contracts as required by law, and never paid extended benefits as required by the Colorado Auto Accident Reparations Act.

August 24, 1998, is the date that the Colorado Supreme Court denied certiorari in *Brennan*.

## C.  Analysis

In essence Fincher alleges that Prudential acted in bad faith when it refused to pay her APIP benefits, despite its knowledge of the law established in *Brennan* and

*Thompson*.  Although stated differently, she asserts essentially the same basis for her

claim of wilful and wanton breach of contract: she alleges that following the denial of

certiorari in *Brennan* on August 24, 1998, Prudential acted wilfully and wantonly in failing

to reform the Bekeshkas policy to provide her with APIP benefits.

As Fincher notes, Prudential argues that it has not acted in bad faith because it

relied on reasonable legal positions when applying *Thompson* and *Brennan* to Fincher's

claims for APIP benefits.  *Plaintiff's response*, p. 18.  Fincher notes that the

reasonableness of Prudential's legal positions "is disputed and is at the core of the

Plaintiff's bad faith claim, and is fact-based."  *Id*.  I agree that the reasonableness of

Prudential's legal positions is "at the core" of Fincher's bad faith claim.  When the

rationale for not paying insurance benefits is based on an insurer's interpretation of the

applicable law, the application of the standards for bad faith and wilful and wanton breach

of contract is a matter of law for the court, and not a question of fact for a jury.  *See Tozer*

*v. Scott Wetzel Services, Inc.*,  883 P.2d 496, 499 (Colo. App. 1994).

I conclude, as a matter of law, that Prudential's interpretation and application of the

law established in *Thompson* and *Brennan* were, at minimum, fairly debatable and, thus,

were reasonable.  From the inception of this case, Prudential argued that the holding in

*Brennan v. Farmers Alliance Mutual Insurance Co.*, 961 P.2d 550, 552 (Colo. App.

1998) was not retroactive.  Again, the *Brennan* court held that §10-4-710, C.R.S. required

insurers to offer APIP coverage that included pedestrians.  961 P.2d at 554.  Prior to

*Brennan* it was unclear whether or not pedestrian coverage was required under §10-4-

710.  In *Clark v. State Farm Mutual Automobile Insurance Co.*, the Honorable Lewis T.

Babcock, a United States District Judge for the District of Colorado, examined the

retroactive application of the *Brennan* rule and concluded that the *Brennan* rule was not

retroactive.  Case No. 00-cv-01841 (D. Colo. June 20, 2001), *rev'd, Clark v. State Farm Mutual Automobile Insurance Co.*, 319 F.3d 1234, 1242 (10th Cir. 2003).   I adopted Judge Babcock's analysis when I granted summary judgment in favor of Prudential in this case.  *Order Concerning Motion for Summary Judgment* [#91], filed June 10, 2002.

The Tenth Circuit reversed Judge Babcock's decision on the retroactivity of the *Brennan* rule in *Clark v. State Farm Mutual Automobile Insurance Co.*, 319 F.3d 1234, 1242 (10th Cir. 2003).  Based on *Clark*, the Tenth Circuit reversed my order in this case, in which I concluded that the holding that *Brennan* was not retroactive.   *Fincher v. Prudential Property and Casualty Ins. Co.*, 76 Fed.Appx. 917 (10th Cir. 2003).  The question of whether or not *Brennan* was applicable retroactively was fairly debatable, at least until the Tenth Circuit issued its rulings in *Clark* and in the present case.  The fact that the position taken by Prudential, Judge Babcock, and myself ultimately was rejected by the Tenth Circuit does not demonstrate that this position was unreasonable.  *Brandon v. Sterling Colorado Beef Co.*,  827 P.2d 559, 561 (Colo. App. 1991) (resort to  judicial forum not per se bad faith or unfair dealing by insurer regardless of the outcome of suit; insurer may challenge claims that are fairly debatable).

Fincher argues also that Prudential acted in bad faith following the ruling of the Colorado Court of Appeals in *Thompson v. Budget Rent-A-Car Sys., Inc.*, 940 P.2d 987 (Colo. App. 1996).  In *Thompson*, an individual was injured seriously while a passenger in a car rented from Budget.    Budget was a self-insurer under Colorado law.  The insurance portion of the rental agreement provided that the renter waived supplemental no fault and other optional coverages. 940 P.2d at 989.  In other words, Budget, as an insurer, did not offer APIP benefits, as required by §10-4-710, C.R.S.  The driver who had rented the car said that he would have refused the supplemental coverage if it had been

offered by Budget.

The Colorado Court of Appeals held that the policy must be reformed to comply

with the requirements of Colorado law.

> When an insurer fails to offer the insured optional coverage that it is
> statutorily required to offer, additional coverage in conformity with the
> required offer is incorporated into the agreement by operation of law.
>
> * * * *
>
> Here, because Budget did not offer supplemental no-fault coverage as
> required by § 10-4-710(2)(a), we conclude that such coverage was
> automatically incorporated into the agreement.  We further conclude that the
> driver's after-the-fact statement that he would have refused the additional
> coverage if it had been offered does not require a different result.

940 P.2d at 990.  The **Thompson** court upheld the trial court's reformation of the

insurance contract to include APIP benefits.  **Thompson** was issued in 1996, two years

before **Brennan**.  After **Thompson**, Colorado law remained unclear on the question of

whether or not pedestrians were required to be included in an offer of APIP benefits.

In support of her argument that Prudential acted in bad faith following **Thompson**,

Fincher cites the following language from my Reformation Order.

> After **Thompson**, Prudential was or should have been aware that reformation of an
> insurance policy was the appropriate remedy when an insured was not offered the
> optional APIP coverages required by the CAARA.  As of September, 1996,
> Prudential was aware that its offer to Bekeshkas was not compliant with the APIP
> provisions of the CAARA, and that reformation of the policy to provide APIP
> coverage was the proper remedy.

*Reformation Order* [#158], filed February 28, 2006, pp. 15-16.  Prudential argues that it

acted reasonably following **Thompson** because it reasonably viewed **Thompson** as

distinguishable from Fincher's circumstance.

In the earlier appeal of this case to the Tenth Circuit, Prudential argued that

**Thompson** was distinguishable because 1) **Thompson** did not establish a pedestrian's

right to APIP benefits; 2) **Thompson** did not indicate that the later ruling in **Brennan** was

applicable retroactively; and 3) *Thompson* is factually distinguishable because the insurer in *Thompson* made no offer of APIP benefits, while Prudential offered Bekeshkas APIP benefits, although the allowable cap on those benefits was understated in the offer. *Fincher v. Prudential Property and Casualty Ins. Co.*, 76 Fed.Appx. 917, 922 (10th Cir. 2003). The Tenth Circuit rejected each of these arguments. *Id*. However, I find as a matter of law that each of these three legal arguments distinguishing *Thompson* from the present case was fairly debatable and had a reasonable basis. If Prudential's legal arguments in support of its refusal to provide APIP benefits to Fincher were fairly debatable and had a reasonable basis, then Prudential cannot be found to have denied Fincher APIP benefits in bad faith to the extent Prudential relied on such legal arguments in support of its decision. *Travelers Ins. Co. v. Savio*, 706 P.2d 1258, 1275 (Colo.1985); *Brandon v. Sterling Colorado Beef Co.*, 827 P.2d 559, 561 (Colo. App. 1991).

Fincher appears to argue that my conclusion in the Reformation Order, quoted above, conclusively supports her bad faith claim. I disagree. As detailed in my Reformation Order, Prudential was aware for a long period of time that its written offers of APIP coverage were not in compliance with the CAARA because those offers provided for a 150,000 dollar cap on such benefits, rather than the 200,000 dollar minimum cap required by Colorado law. However, even with this knowledge, the legal remedies available to Fincher based on this flaw remained somewhat uncertain following Fincher's accident, following the ruling in *Thompson*, and following the ruling in *Brennan*. Again, as outlined above, it was reasonable both legally and factually for Prudential to argue that *Thompson* was distinguishable from Fincher's circumstances, and that *Brennan* was not applicable retroactively.

Arguably, the conclusion stated above is contrary to my statement in the final

phrase of this sentence in my Reformation Order:

> As of September, 1996, Prudential was aware that its offer to Bekeshkas was not compliant with the APIP provisions of the CAARA, *and that reformation of the policy to provide APIP coverage was the proper remedy*.

*Reformation Order* [#158], filed February 28, 2006, pp. 15-16 (emphasis added).  Having reviewed this matter again in great detail , I conclude that my Reformation Order [#158] should be amended to provide as follows: "As of September, 1996, Prudential was aware that its offer to Bekeshkas was not compliant with the APIP provisions of the CAARA, and that reformation of the policy to provide APIP coverage may be the proper remedy."  This amendment substitutes the words "may be" for the word "was" in the subject sentence.  As discussed above, following **Thompson**, there were reasonable factual and legal arguments in support of Prudential's position that reformation was not required in Fincher's case.  In the phrase quoted above, the words "may be" more accurately describe the legal landscape faced by Prudential following the **Thompson** ruling than does the word "was."  I conclude also that the amendment of this phrase in the Reformation Order does not significantly alter my analysis of the applicable reformation factors, or the ultimate conclusion that I reached in the Reformation Order.

In sum, I conclude that Fincher's claims of bad faith breach of insurance contract and wilful and wanton breach of insurance contract, as pled in her complaint, are based on her claim that Prudential knowingly and unreasonably denied her claim for APIP benefits following the rulings of the Colorado Court of appeals in **Thompson** and **Brennan**.  A determination of whether Prudential adopted reasonable interpretations of these legal rulings as applied to Fincher's claims is a matter of law to be determined by the court, and not by a jury.  I conclude that Prudential's interpretations of these rulings, as applied to Fincher, were reasonable, even though Prudential's interpretations later were rejected by

the Tenth Circuit.  If Prudential's legal interpretations had a reasonable basis, then it is not

possible for Fincher to prove that Prudential acted in bad faith in denying her APIP claim

following the rulings in **Thompson** and **Brennan**.   "(A)n insurer may challenge claims

which are fairly debatable and will be found to have acted in bad faith only if it has

intentionally denied (or failed to process or pay) a claim without a reasonable basis."

**Brandon v. Sterling Colorado Beef Co.**, 827 P.2d 559, 561 (Colo. App. 1991) (citing

**Travelers Insurance Co. v. Savio**, 706 P.2d 1258, 1274-1275 (Colo. 1985)).  If

Prudential's legal interpretations were reasonable, then Fincher cannot establish that

Prudential acted without justification and in disregard of Fincher's rights.  Without such a

showing, Fincher cannot establish her claim of wilful and wanton failure to pay insurance

benefits.  **Dale v. Guaranty National Insurance Co.**, 948 P.2d 545, 551 (Colo.1997).

In her response to Prudential's motion for summary judgment, Fincher argues that

Prudential's conduct following the Tenth Circuit's ruling in this case also provides a factual

basis for her bad faith breach and wilful and wanton breach claims.  *Plaintiff's response*,

pp. 13-16.  Fincher never has sought to amend her complaint to include such factual

allegations in support of her these claims.  Fincher may not properly amend the factual

allegations that support her claim by reciting such allegations for the first time in her

response to the motion for summary judgment.  As Fincher notes, at least one Colorado

court has found an insurer's conduct after a suit was filed to be relevant to an insurance

bad faith claim.  **Dale v. Guaranty Nat. Ins. Co.**, 948 P.2d 545, 553-554 (Colo. 1997).

The fact that such conduct may be relevant to a bad faith claim does not eliminate the

requirement that a defendant be given notice in the complaint of the general factual basis

for the claim against it.  Here, Prudential has not been given proper notice that its conduct

following the Tenth Circuit's ruling is alleged to form an additional factual basis for

Fincher's bad faith and wilful and wanton breach of contract claims.

Similarly, Fincher's summary of her claims in the **Fourth Amended Pretrial Order** [#238], filed August 14, 2007, asserts for the first time another new factual basis for her claims.  On page four of the **Fourth Amended Pretrial Order**, Fincher asserts that Prudential knew that Fincher was entitled to APIP benefits when her basic PIP benefits were exhausted.  Fincher's basic PIP benefits were exhausted in about September, 1994. This factual basis for Fincher's claims goes well beyond the factual basis alleged in Fincher's complaint, quoted in Section V.B. of this order.  Prudential objected to this expansion of Fincher's claims in the **Fourth Amended Pretrial Order**.  Prudential has not fairly been put on notice that its conduct prior to the issuance of the **Brennan** and **Thompson** decisions is asserted as a basis for Fincher's claims.  Therefore, I will not permit Fincher to assert this new factual basis for her claims at this late date.

### D.  Conclusion

Fincher has not cited any evidence in the record that demonstrates the existence of a genuine issue of material fact related to her claims of bad faith breach of insurance contract, and wilful and wanton breach of insurance contract.  As Fincher herself notes, the core of these claims is the question of whether or not Prudential relied on reasonable legal positions when it denied Fincher claims for APIP benefits.  I conclude, as a matter of law, that Prudential's legal positions were reasonable as those positions related to Fincher's claims for APIP benefits.  This is true even though those legal positions ultimately were rejected by the Tenth Circuit.  Viewing the undisputed facts in the record in the light most favorable to Fincher, I conclude that Prudential is entitled to judgment as a matter of law on Fincher's third cause of action, breach of the covenant of good faith and

fair dealing, and her fourth cause of action, wilful and wanton breach of contract.

## VI.  ORDERS

**THEREFORE, IT IS ORDERED** as follows:

1.  That summary judgment is **GRANTED** *sua sponte* in favor of the plaintiff, Kelly Fincher, by her natural father and next friend, James Fincher, and against defendant, Prudential Property and Casualty Insurance Company, on the issue of liability in the plaintiff's second cause of action, alleging breach of contract;

2.  That the **Defendant's Motion for Partial Summary Judgment** [#211], filed March 9, 2007, is **GRANTED** to the extent the defendant seeks a determination that the damages due to the plaintiff on her second cause of action, alleging beach of contract, are limited to 92,500 dollars as the balance of APIP benefits due to Fincher, and for 202,000 dollars as payment for the statutory interest due to Fincher under  §10-4-708(1.8), C.R.S.;

3.  That the plaintiff is **AWARDED** damages on her second cause of action, alleging beach of contract, in the amount of 92,500 dollars as the balance of APIP benefits due to the plaintiff, and in the amount of 202,000 dollars as payment for the statutory interest due to the plaintiff under  §10-4-708(1.8), C.R.S.;

4.  That Fincher is entitled to a determination by the court of the amount of attorney fees, if any, due her under §10-4-708(1.7)(c), C.R.S.;

5.  That the **Defendant's Motion for Partial Summary Judgment** [#211], filed March 9, 2007, is **GRANTED** as to the defendant's request for a determination that the plaintiff's second cause of action, alleging breach of contract, is moot to the extent that further litigation to determine liability, damages, or interest due to the plaintiff now is unnecessary;

6.  That the **Defendant's Motion for Partial Summary Judgment** [#211], filed March 9, 2007, is **GRANTED** as to any claim for additional relief asserted by the plaintiff based on her second cause of action, breach of contract;

7.  That the **Defendant's Motion for Partial Summary Judgment** [#211], filed March 9, 2007, is **GRANTED** as to the plaintiff's third cause of action, breach of the covenant of good faith and fair dealing, and her fourth cause of action, wilful and wanton breach of contract;

8.  That the plaintiff's third cause of action, breach of the covenant of good faith and fair dealing, and her fourth cause of action, wilful and wanton breach of contract, are **DISMISSED** with prejudice;

9.  That the **Defendant's Motion for Partial Summary Judgment** [#211], filed March 9, 2007, is **DENIED** otherwise;

10.  That my **Findings of Fact, Conclusions of Law, & Orders** [#158], filed February 28, 2006, (Reformation Order) are **AMENDED** to provide as follows: "As of September, 1996, Prudential was aware that its offer to Bekeshkas was not compliant with the APIP provisions of the CAARA, and that reformation of the policy to provide APIP coverage may be the proper remedy.";

11.  That on or before **November 15, 2007**, the plaintiff **MAY FILE** a brief in support of her claim for an award of attorney fees by the court under §10-4-708(1.7)(c), C.R.S.;

12.  That any response and reply shall be marshaled under D.C.COLO.LCivR 7.1C;

13.  That absent the timely filing of a brief in support of the plaintiff's claim for an award of attorney fees under §10-4-708(1.7)(c), C.R.S., that claim **SHALL BE FORFEITED**;

14.  That the jury trial set to begin on Monday, October 15, 2007, at 8:30 a.m., is

**VACATED**;

15.  That all other pending motions are **DENIED** as moot;

16.  That following the resolution of the plaintiff's claim for an award of attorney fees under §10-4-708(1.7)(c), C.R.S., the court shall direct the entry of final judgment in this case.

Dated October 9, 2007, at Denver, Colorado.

**BY THE COURT:**

**s/ Robert E. Blackburn**
**Robert E. Blackburn**
**United States District Judge**